IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUCILLE M. CHACON,

        Plaintiff,

v.                                                        CIV 98-1578 BB/KBM

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Chacon's) Motion to Reverse, filed July 21, 1999. The Commissioner of Social Security issued a final decision denying Chacon's application for supplemental security income benefits. I have considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, I find that the motion is not well taken and should be denied.

### A. Facts/Procedural Background

Chacon, now 47, filed for supplemental security income benefits under Title XVI of the Social Security Act April 9, 1996. [AR 94] She alleged disability due to back pain, eye pressure, and a heart murmur. [AR 108] After a hearing, the administrative law judge (ALJ) found that Chacon had impairments, but that they did not prevent her from performing her past work. [AR 14, 18] The Appeals Council denied Chacon's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of review. Chacon now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

### B. Standard of Review and Applicable Law

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalal*a, 43 F.3d 1392, 1395 (10th Cir. 1994).

To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) citing 42 U.S.C. § 423(d)(1)(A). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is or is not disabled. *Thompson*, 987 F.2d at 1486.

At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1420 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*. This case involves step four of the sequential evaluation.

## C. Issues

Chacon claims four points of error: (1) the ALJ rejected the treating physician's opinion without substantial evidence [MTR 2]; (2) the ALJ improperly found Chacon not credible [MTR 5]; (3) the ALJ erred in finding that Chacon's past work was relevant [MTR 8]; and, (4) the ALJ's hypothetical questions to the vocational expert were flawed. [MTR 8] I find no error in any of these points and recommend affirmance of the ALJ's decision.

## D. Discussion

*1. The ALJ properly rejected Dr. Espinoza's opinion regarding Chacon's ability to work.*

Dr. Herman Espinoza, M.D., Chacon's treating physician, performed a consultative examination on her September 23, 1996. [AR 173] Dr. Espinoza concluded that Chacon could lift or carry 10 pounds occasionally and one to two pounds frequently; could walk or stand for one hour in an eight-hour day and for 10 minutes with [sic] interruption; and could sit for two hours in an eight-hour day and for five minutes without interruption. [AR 177-78] Dr. Espinoza did not, however, answer the questions on the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form as to what medical findings supported these assessments. [AR 177-78]

Evaluation forms, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence. *Frey v. Bowen* 816 F.2d 508, 515 (10th Cir. 1987). It is unclear from Dr. Espinoza's less than detailed report which of Chacon's impairments created these limitations, or to what extent. As for a connection from the rest of the record, Chacon's back pain complaints appear to arise from relatively minor problems – mild L4-5 and L5-S1 facet degeneration and mild disc bulging at L5-S1 -- with no other problems noted. [AR 158]

Furthermore, Chacon's Holter monitor study at Southwest Cardiology Associates was unremarkable, with no correlation of her symptoms to significant arrhythmias. [AR 168] The tenderness of the lumbosacral area, limited range of motion, full mobility, with no other problem noted, also support the ALJ's conclusion. [AR 16] Finally, as I discuss below, the ALJ properly found Chacon's testimony unpersuasive. Consequently, the doctor's assessment is not substantial evidence. The ALJ therefore correctly rejected Dr. Espinoza's assessment.

When an ALJ rejects, a treating physician's opinion, he must provide specific, legitimate reasons for doing so. *Frey*, 816 F.2d at 513. Here, the ALJ rejected Dr. Espinoza's opinion because the doctor had treated Chacon in April 1996, yet placed her on no restrictions from work until the September 1996 consultative examination, with no explanation of any intervening event to justify the sudden change. The ALJ also found that Dr. Espinosa's September 1996 examination did not support the work restrictions. [AR 16] To the extent the ALJ misplaced his reliance on the lack of work restrictions in April 1996, he appears to have erred. Chacon had not worked in several years, and so work restrictions were not a question in April 1996. Any error, however, was harmless, in view of the ALJ's other specific and legitimate reason for rejecting Dr. Espinoza's opinion -- the failure of the examination to support the restrictions.

    2. *<u>The ALJ properly found Chacon not credible</u>*.

The ALJ found Chacon not credible for several reasons. He noted that no medical diagnosis existed regarding her symptoms of leg pain or hand problems; her vision was correctable with glasses; in May 1996, Chacon reported difficulty "sometimes" in sweeping, vacuuming, carrying wood, or working outside; she cooked her own meals, shopped, crocheted, walked, dressed herself, wrote letters; babysat until April 1996, which consisted of walking five hours a day, standing and sitting four hours, lifting 25 pounds frequently and 50 pounds

4

occasionally. She took Flexeril only at night and non-prescription Tylenol, which was inconsistent with a claim of disabling pain. [AR 17-18, 111-14]

Citing *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993), Chacon argues that an ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer from disabling pain. She takes this argument too far, however, in claiming that daily activities are beyond consideration for disability purposes. [MTR 6] *Thompson* specifically states that, when determining credibility of pain testimony, the ALJ should consider, among other things, factors such as levels of medication and their effectiveness, medical contacts, *the nature of daily activities*, and the consistency of non-medical testimony with objective medical evidence. *Thompson*, 987 F.2d at 1489.

The ALJ's opinion demonstrates that he considered all these things carefully. As such, his finding that Chacon was not credible had support from, and connection with, substantial evidence in the record. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (requiring findings as to credibility to be closely and affirmatively linked to substantial evidence). Finding no error in the ALJ's decision on this point, I recommend affirmance on it also.

    *3. <u>The ALJ correctly found that Chacon's past work as a receptionist was relevant</u>.*

Past relevant work is defined as work that (1) occurred within the past fifteen years (the so-called recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the so-called duration requirement), and (3) was substantial gainful employment. *Jozefowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987). Work may be substantial even if it was done part time. 20 C.F.R. § 416.972(a). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Furthermore, earnings of less than $190.00 per month between calendar years 1979 and 1990

ordinarily show that a claimant has not engaged in substantial gainful activity. 20 C.F.R. § 416.974(b)(3)(vi). Earnings of more than $300.00 per month ordinarily show substantial gainful activity. § 416.974(b)(2)(vi). If the claimant's earnings fall between those used to determine substantial gainful activity, the Commissioner considers other information such as comparable work by unimpaired people in the community, taking into account the time, energy, skill, and responsibility involved. § 416.974(b)(6)(i).

In the present case, Chacon appears to have fallen into the middle zone, having earned $192.00 per month between 1982 and 1986 as a receptionist. [AR 112] It is unclear, however, from the record whether the ALJ compared Chacon's work to that of others in the community. The ALJ simply found that the work was relevant, though he did not show how he arrived at that conclusion. [AR 18] This work appears to have been relevant, having occurred within the previous 15 years [AR 112], *see* § 416.965. Furthermore, the $192.00 per month that Chacon made working 20 hours per week [AR 56, 112], would be $384.00 per month at a full time rate, and well over the amount the Commissioner considers indicative of substantial gainful activity. § 416.974(b)(2)(vi).

Even when work previously done cannot be considered substantial gainful activity, it "may show that [a claimant is] able to do more work" than what she actually did. 20 C.F.R. § 416.971. So even if Chacon's previous employment as a receptionist would arguably not be substantial gainful activity, when considered at a full time rate and without a reason to conclude that she was then otherwise unable to work full time, this employment shows that she was able to do substantial gainful activity. As such, it is valid to presume that the employment was substantial gainful activity. *Cf. Jozefowicz*, 811 F.2d at 1357 (calculating hourly wage in reference to a hypothetical 35-hour week to determine whether earnings level comported with time and energy

6

expended to constitute substantial gainful activity).

The ALJ, moreover, elicited testimony from the vocational expert that Chacon could perform other work, including surveillance system monitor and file clerk, and that such jobs existed in sufficient numbers in the regional and local economy. [AR 58-60] The ALJ asked this question referring to the State of New Mexico's residual functional capacity assessment of Chacon. [AR 58] The assessment shows Chacon able to lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk for six hours, sit for six hours, with pushing and pulling unlimited except as they concerned lifting or carrying. [AR 100-06] In doing so, the ALJ provided substantial evidence of record to affirm in a step five evaluation, *see* § 416.920(f), so that even if he improperly found Chacon not disabled at step four, the error was minimal, and had no effect on the ultimate result. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) (at step five, an ALJ may relate claimant's impairments to a vocational expert and then ask whether there are any jobs in the economy that the claimant can perform); *see also Limerick v. Chater*, 1995 WL 324487, at *2 (10th Cir. (Okla.)) (court performed its own step five evaluation where ALJ erred at step four, but where sufficient evidence of record allowed step five analysis) (copy attached). Accordingly, I find no reversible error in the ALJ's decision and recommend affirmance on this point.

*4. The ALJ's hypotheticals to the vocational expert were proper.*

Hypothetical questions, to be valid, must reflect only the impairments that are borne out by evidence in the record. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ's hypotheticals did this, as shown above. Having properly discounted Chacon's complaints and testimony, and Dr. Espinosa's unsupported examination results, the ALJ properly asked hypotheticals that excluded these alleged limitations. [AR 58-60] The actual error would have

7

been for the ALJ to have rejected the evidence, and then to have incorporated such findings into a hypothetical upon which he relied. As the case now stands, I find no error on this point either, and therefore recommend affirmance on it also.

### E. CONCLUSION

For the reasons stated above, I recommend affirmance of the ALJ's decision. Objections to the foregoing may be timely made pursuant to 28 U.S.C. § 636(b)(1).

_____
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**Attorney for Plaintiff:** James A. Burke, Esq.
P.O. Box 9332
Santa Fe, NM 87504

**Attorneys for Defendant:** Joan M. Hart, Esq.
P.O. Box 607
Albuquerque, NM 87103

Una McGeehan, Esq.
1301 Young St, Suite 130
Dallas, TX 75202

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

56 F.3d 77 (Table)
**Unpublished Disposition**

**(Cite as: 56 F.3d 77, 1995 WL 324487 (10th Cir.(Okla.)))**

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

**Cheryl E. LIMERICK, Plaintiff-Appellant,**
**v.**
**Shirley S. CHATER, Commissioner of Social Security, [FN1] Defendant-Appellee.**

**No. 94-5149.**

United States Court of Appeals, Tenth Circuit.

May 31, 1995.

ORDER AND JUDGMENT [FN2]

Before EBEL and BARRETT, Circuit Judges, and KANE, [FN***] District Judge.

**1 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Cheryl E. Limerick appeals from an order of the magistrate judge [FN3] affirming the Secretary's decision to deny her application for social security benefits. The Secretary concluded, on the basis of expert vocational testimony, that plaintiff could return to two past occupations and, therefore, must be deemed nondisabled at step four of the controlling sequential analysis. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988)(explaining five-step analysis set out in 20 C.F.R. 404.1520, 416.920). We closely examine the record as a whole to determine whether the Secretary's decision is supported by substantial evidence and adheres to applicable legal standards. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir.1994). For the reasons that follow, we reverse and remand for further consideration by the Commissioner.

The administrative law judge (ALJ) found that plaintiff suffered from "impairments of depression, a personality disorder, arthritis, and status post fracture of the patella ... [which] interfere more than minimally with [her] work-related activities" and which, therefore, collectively constitute "a vocationally severe impairment." R. Vol. II at 11. The ALJ determined that, considering the exertional components of these impairments, plaintiff retained a residual functional capacity (RFC) for light and sedentary work. See id. at 14-16, 17. With respect to plaintiff's nonexertional complaints, the ALJ found "[t]he medical

evidence establishes that the claimant has mild to moderate depression [and] a personality disorder," id. at 17, as well as a cognitive limitation that precludes her from "understanding, remembering, and carrying out complex and detailed job instructions," id.; see also id. at 14, 16. The ALJ discounted plaintiff's allegations of frequent severe headaches, arthritic pain, and chronic diarrhea, concluding these conditions, to the limited extent substantiated by the record, did not further restrict her ability to do light and sedentary work.

On appeal, plaintiff challenges the sufficiency of the evidence underlying the adverse findings included in the above summary. Considering plaintiff's various contentions in light of the record as a whole, we conclude that the ALJ's basic findings regarding plaintiff's impairments and RFC are supported by the requisite substantial evidence, with one qualification explained below in connection with our critique of the incomplete hypothetical the ALJ posed to the vocational expert. Before addressing that matter, however, we must discuss a related problem that, while not itself dispositive of the outcome here, necessarily frames the ensuing analysis that is controlling.

**\*\*2** The ALJ uncritically referred to the occupations of waitress and telephone solicitor as plaintiff's past relevant work, and the vocational expert reflexively followed suit. To constitute past relevant work, however, a job must have been (1) held "within the past fifteen years," (2) performed for a "sufficient duration to enable the worker to learn to do the job," and (3) sufficiently productive and remunerative to qualify as "substantial gainful employment." Jozefowicz v. Heckler, 811 F.2d 1352, 1355-56 (10th Cir.1987); see 20 C.F.R. 404.1565(a), 416.965(a). Our record lacks the requisite substantial evidence showing these conditions were satisfied by the jobs identified by the ALJ, who made no findings in this regard. The scant evidence about waitressing shows only that plaintiff did it for "2 months" at some unspecified time in the past. See R. Vol. II at 37, 94. As for telephone soliciting, all we know is that plaintiff worked briefly and part-time at two such jobs (four days per week for two months at one and three days per week for four months at the other) sometime in 1983 and/or 1984, and earned such a meager amount on commission that, given her transportation expenses, "financially it wasn't feasible for [her] to even go to work." R. Vol. II at 35, 36, 206, 216. [FN4]

This critical flaw in the ALJ's step-four analysis does not itself require reversal, as the ALJ went on to elicit testimony from the vocational expert establishing the prevalence of the occupations the expert had said plaintiff could perform given her age, education, work experience, and RFC, id. at 53, which is the type of evidence properly used to resolve the question of disability at step five. See generally 20 C.F.R. 404.1520(f) & 404.1566, 416.920(f) & 416.966. The issue of plaintiff's past relevant work, and the ALJ's unjustified assumption that the cited occupations qualified as such, is not pertinent at this stage in the analysis. We therefore consider whether the record can support the denial of benefits at step five.

That, however, brings us to the dispositive error in this case. As noted above, the ALJ properly found that plaintiff suffered from a personality disorder and mild to moderate depression. [FN5] Further, in his Psychiatric Review Technique (PRT) Form, the ALJ noted these conditions caused a slight restriction in plaintiff's daily living activities and moderate difficulty in her social functioning, R. Vol. II at 21, the latter impairment obviously a matter of concern in the socially interactive occupations cited by the ALJ, [FN6] see also id. at 240-50 (PRT

prepared by reviewing physician, indicating severe impairment by affective and personality disorders that moderately limit plaintiff's "ability to interact appropriately with the general public" and require "work of low stress nature"). Notwithstanding these findings, the ALJ failed to include plaintiff's psychological impairments in his hypothetical to the vocational expert. The ALJ did not even mention her personality disorder, and, though he referred to her moderate depression, he then effectively negated that impairment by telling the expert simply to assume that it did not alter the light and sedentary RFC he had already ascribed to plaintiff. [FN7] See id. at 51-53. "[T]he ALJ's failure to include in his hypothetical inquiry to the vocational expert any limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record." Evans v. Chater, No. 94-5163, slip op. at 4 (10th Cir. May 19, 1995)(footnote and citations omitted).

**\*\*3** Accordingly, this case must be remanded for additional proceedings consistent with the principles expressed herein. "We do not intend here to rule out the possibility that additional, substantial evidence could ultimately demonstrate that the degree of [psychological] impairment involved is either medically de minimis or vocationally inconsequential. On the present record, however, no such finding is sustainable." Id. at 5.

The judgment of the magistrate judge sitting for the United States District Court for the Northern District of Oklahoma is REVERSED. The cause is REMANDED to the district court with directions to remand, in turn, to the Commissioner for further proceedings.

FN1. Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we generally refer to the Secretary because she was the appropriate party at the time of the underlying decision.

FN2. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470.

FN\*\*\* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

FN3. The parties consented to disposition of the case by the magistrate judge pursuant to 28 U.S.C. 636(c)(1). Accordingly, our jurisdiction over this appeal is secured by 636(c)(3) and 28 U.S.C. 1291.

FN4. The record also includes a summary printout of plaintiff's FICA earnings indicating that she made $6,583 in 1983 and $913 in 1984. See R. Vol. II at 205. The latter figure amounts to $76 per month, less

than half the income level under which the earner is presumed not to be engaged in substantial gainful activity. See 20 C.F.R. 404.1574(b)(3)(vi), 416.974(b)(3)(vi); see also Jozefowicz, 811 F.2d at 1356. While the comparable figure for 1983, $548 per month, would indicate substantial gainful activity under the regulations, we do not know how much of that figure reflects plaintiff's phone soliciting commissions, as she evidently engaged in a number of occupations in this general time period, see R. Vol. II at 206, 216. Thus, the unexplained FICA printout does not contradict plaintiff's uncontroverted testimony regarding the financially insubstantial nature of her brief stint as a phone solicitor.

FN5. These findings are consistent with the diagnoses of plaintiff's treating physicians at Mental Healthcare Services, Inc., where plaintiff was committed for eleven days in February 1990, and Dr. Inbody, a consulting physician who examined plaintiff in June 1990, see R. Vol. II at 270, 291. In the body of his decision, the ALJ appears to discount the latter's opinions in favor of those of a second consulting physician, Dr. Gordon, which he characterizes as "[more] consistent with the diagnoses of [plaintiff's] treating psychiatrist." Id. at 14. Actually, Dr. Gordon concluded--contrary to plaintiff's treating physicians, Dr. Inbody, and the ALJ himself--that plaintiff "does not have a psychological problem beyond some over-reactivity, (hysterical type behavior) in addition to some dependent tendencies." Id. at 302 (emphasis added).

FN6. Again, these findings of the ALJ are consistent with the diagnoses of plaintiff's treating physicians and Dr. Inbody, see R. Vol. II at 270, 291, though in conflict with the opinion of Dr. Gordon, who found "[n]o mental or emotional impairment to employment," id. at 302. Indeed, Dr. Gordon even appears to contradict himself in this regard, as he affirmatively limits the type of work to which plaintiff is "capable to responding appropriately" to "some type of routine repetitive task." Id.

FN7. Given the psychological/social--i.e., nonexertional--nature of the impairment in question, it obviously would cut across, rather than determine, plaintiff's (exertional) RFC levels. Accordingly, instead of concluding, essentially as a tautological matter of definition, thatplaintiff's RFC would be unaffected by such a nonexertional impairment, the ALJ should have asked the vocational expert to explain, empirically, the effect it would have on the job base--and, particularly, the two cited occupations--available to plaintiff by virtue of her age, education, work experience, and the RFC levels identified.

END OF DOCUMENT